In re Franklin Leroy CASEY, Linda Ann Casey d/b/a Casey's Auto, d/b/a Casey Properties, f/d/b/a Franklin Casey, M.D., Debtors.

Franklin Leroy CASEY, Linda Ann Casey d/b/a Casey's Auto, d/b/a Casey Properties, f/d/b/a Franklin Casey, M.D., Plaintiffs,

v.

NATIONSBANK OF TEXAS, N.A. f/k/a NCNB Texas National Bank, N.A. and Federal Deposit Insurance Corporation, Defendants.

Bankruptcy No. 92–40333.[1]
Adv. No. A–92–4073.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Oct. 28, 1994.

---

1. Subsequent to the hearing on this motion the case was converted to one under chapter 7 of the Code.

Emil Lippe, Jr., Dallas, TX, for debtors.

Lindy Jones, Jones, Allen & Fuquay, Dallas, TX, for NationsBank of Texas and FDIC.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Motion of Defendants NationsBank of Texas, N.A. f/k/a NCNB Texas National Bank, N.A. ("Bank") and Federal Deposit Insurance Corporation ("FDIC") (collectively referred to as ("Defendants") for Sanctions pursuant to regular setting in Plano, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Some brief history of this dispute is in order. Between 1984 and 1986 Franklin Leroy and Linda Ann Casey ("Debtors") executed promissory notes and deeds of trust securing such notes relating to the purchase of five properties. These notes and deeds of trust were made payable to predecessors of Bank.[2]

In the late 1980's and early 1990's Debtors were unable to service the notes. Bank made demands for the payments of the notes; Debtors responded by filing a state court suit to prevent the foreclosure of the properties. Debtors claimed certain defenses and/or counterclaims including an action for an accounting, negligent misrepresenta-

---

**2.** In the Summer of 1988, the notes and deeds of trust came into the possession of the FDIC. Subsequently, pursuant to a purchase and assump- tion agreement dated July 29, 1988, the FDIC transferred these notes and deeds of trust to Bank.

tion, usury, and a violation of the Texas Deceptive Trade Practices Act. On January 18, 1991, the FDIC intervened in the state court suit at which time the suit was removed to the United States District Court for the Northern District of Texas ("the district court suit").

On November 12, 1991, the district court entered summary judgment in favor of Bank and FDIC granting judgment on the various notes. Subsequently, the district court authorized Bank to foreclose its interest in the properties. The amounts received by Bank pursuant to the foreclosure sales were credited to the outstanding balance on the notes. Although not expressly stated, the judgment entered by the district court on March 18, 1992 reflects this crediting. Debtors' appeal of this order was unsuccessful. On March 30, 1992, Debtors filed for relief under chapter 11 of the Code. On June 25, 1992, Debtors filed the above-styled and numbered adversary proceeding.

In their adversary proceeding Debtors alleged that Bank conspired to wrongfully foreclose on their properties in an attempt to create an artificially high deficiency. Debtors contend that the values of the properties were much higher than the amounts received by the Bank at the foreclosure sales and that they are entitled to either avoid the foreclosure sales or receive a higher credit against Bank's deficiency claim. The legal basis of Debtors' complaint was founded in 11 U.S.C. § 548(a)(2) of the Code[3] and Section 51.003 of the Texas Property Code.[4] On

December 20, 1993, Debtors filed a first amended complaint upon leave of court. Debtors described the basis of their complaint as follows:

Defendants knowingly, willfully, and maliciously caused the foreclosures to be done for far less than fair market value, intending to create false profits for themselves and to cause severe damages to plaintiffs, realizing that the result of defendants' wrongful actions would likely be that plaintiffs would be forced to file for protection under the federal bankruptcy law.

Debtors further alleged that the deficiency created by the foreclosure was artificially high because the appraisals used by Bank to justify its foreclosure bid price "were the result of a process knowingly and intentionally designed to generate fraudulently low figures." As an additional legal basis for recovery Debtors pled application of the Texas Fraudulent Transfer Act.[5] However, the greatest significance in Debtors' amended complaint was its enumeration of the damages sought. Instead of merely seeking recovery of the properties or a proper credit to reflect fair market value Debtors claimed damages for loss of equity, loss of past and future rental income, loss of properties due to bankruptcy, damage to credit, financial and business reputation, excess interest expense due to inability to refinance properties, mental anguish, and attorneys' fee which if assessed for all the violations alleged would approach one hundred million dollars. On February 22, 1994 the matter came before the Court for trial. The Court divided the

---

**3.** Section 548(a)(2) generally allows the avoidance of a prepetition transfer of an interest of the debtor in property if the consideration received by the debtor for such property constituted less than reasonably equivalent value. Debtors' reliance on this section of the Code is based on the holding in *Durrett v. Washington National Insurance Company*, 621 F.2d 201 (5th Cir.1980) in which the Fifth Circuit, in dicta, indicated that any sale for less than 70% of fair market value should be invalidated. The *Durrett* decision led a number of courts to adopt a mechanical approach to § 548(a)(2) issues. Recently, the Supreme Court in *BFP v. Resolution Trust Corp.*, —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) effectively overruled *Durrett* by holding that for purposes of § 548(a)(2) application 'reasonably equivalent value' for foreclosed property is the price in fact received at the foreclosure

sale, as long as all the requirements of a state's foreclosure law have been met.

**4.** Section 51.003 of the Texas Property Code (Vernon 1984 and Supp.1994) generally allows a party to challenge a deficiency judgment by asserting that the value of the property is greater than the price received at the foreclosure sale. To the extent the value is demonstrated to be greater than the foreclosure sales price the party subject to the deficiency claim is entitled to an appropriate credit.

**5.** The Texas Fraudulent Transfer Act is found in §§ 24.001 *et seq.* of the Texas Business and Commerce Code (Vernon 1987). This Act is functionally similar to § 548(a)(2) of the Code except that it provides in certain circumstances a four year statute of limitation.

trial into a liability segment and a damages segment. At the close of the Debtors' case-in-chief on the liability segment the Court, finding that Debtors had wholly failed to prove their case, granted Defendants' motion for directed verdict.

Prior to this verdict, on February 15, 1994, Defendants filed the instant Motion asserting that Debtors' amended complaint was in violation of Fed.R.Bankr.P. 9011 [6] in two areas. First, Defendants complain that there are no grounds for the award of consequential damages either in the statutory basis of Debtors' amended complaint or the caselaw. Second, Defendants argue that in pursuing these damage claims Debtors are attempting to relitigate issues decided in the district court suit and that such an attempt is sanctionable pursuant to 28 U.S.C. § 1927 which provides for the assessment of costs, expenses and attorneys' fees against an attorney or party which "multiplies the proceedings in any case unreasonably and vexatiously." Defendants claim that in direct response to Debtors' actions they have incurred attorneys' fees in an amount exceeding fifty thousand dollars. After a contested hearing the matter was taken under advisement.

## DISCUSSION OF LAW

■ At the outset, the Court is compelled to note what is at issue in this case and what is not at issue. What is at issue is the propriety of Debtors' amended complaint attempting to seek $100,000,000.00 million dollars in damages for Bank's foreclosure of their property when there is no basis in law or fact for the award of such damages. What is not at issue is the propriety of Debtors' original complaint asserting either a standard § 548(a)(2) action under the Code or a § 51.003 action under the Texas Proper-

ty Code. Both causes of action would at most allow the Debtors to either recover their properties or obtain a greater credit against any deficiencies; neither, based on the language in the statutes and the interpretative caselaw, would allow Debtors any affirmative recovery. The same observation extends to the later added cause of action based on the Texas Fraudulent Transfer Act. Due to this clarification the bulk of the sixty-three pages comprising the original and supplemental response to Defendants' six-page Motion is irrelevant. After due consideration, the Court must find that Debtors' actions in this case have violated Fed. R.Bankr.P. 9011.

To recap, Debtors' amended complaint alleged in pertinent part that Bank had engaged in a conspiracy to depress the appraisals used as a basis for determining Bank's bid price at the foreclosure sale of Debtors' property. The purpose of this action was to both create false profits for the Bank and to purposely cause damage to Debtors, the likely result of which would be that Debtors would be forced to seek relief under the Code. Although the statutes cited by Debtors as the basis of their action did not provide for a recovery to the injured party beyond the value of the property Debtors still maintained an entitlement to affirmative damages in excess of one hundred million dollars. The Court must conclude that Debtors' amended complaint was not "well grounded in fact [or] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." (paraphrasing Fed.R.Bankr.P. 9011).

■ Alleging that a party has engaged in a conspiracy, the purpose of which is to cause damage to another party, is a serious allegation. Fed.R.Bankr.P. 9011 requires that if

---

**6.** The operative language of Fed.R.Bankr.P. 9011 provides:

........ The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass,

or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case ........ If a document is signed in violation of this rule, the court on motion or its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

an accusing party makes such an allegation evidence must exist which would support the charge. In this case, the evidence was wholly lacking. Debtors failed to demonstrate any impropriety on behalf of the Bank in conducting the foreclosure sales. While reasonable minds may differ as to whether the prices received at the foreclosure sales were 'reasonably equivalent values' or 'fair market values' there was no evidence that the prices received were the result of an intentional design on the part of the Bank. The Court acknowledges that Debtors produced an expert who testified that it was known in the appraisal community that Bank generally expected its hired appraiser to deliver conservative appraisals. The Court also concedes that the evidence appears to support Debtors' contention that Bank even occasionally challenged the assumptions underlying an appraisal which often resulted in the lowering of the challenged appraisals by the appraiser. All of this, however, is a far cry from demonstrating the sort of conspiracy alleged by Debtors. In the first place, it should come as no surprise that a conservative lending institution such as a bank would generally favor conservative appraisals for the purpose of risk allocation. In the second place, there is nothing undue about challenging the assumptions underlying an appraisal. Bank, like any employer hiring a third party to perform a service, is entitled to question whether the service has been performed properly. Since the evidence failed to demonstrate any general conspiracy on the part of Bank to depress appraisals it should come as no surprise that no evidence supported the application of Debtors' conspiracy theory to the facts of their case. This is one of the reasons the Court granted Defendants' motion for directed verdict at trial.

■ Debtors complain that it would be inequitable to restrict them to the remedies offered by § 548(a)(2) of the Code, § 51.003 of the Texas Property Code and the Texas Fraudulent Transfer Act. In pertinent part, none of these statutes provide for any affirmative recovery by the aggrieved party. Such a restriction would, assert Debtors, chill any creativity on the part of an attorney and prevent the law from ever being either modified, extended, or reversed. The Court is unmoved. All of the statutes relied upon by Debtors are specific in application and remedy. None of these statutes, in either wording or interpretative commentary, suggests any right of a debtor to an affirmative recovery beyond the value of the property at issue. If Debtors believe that such statutes provide inadequate remedies their sole recourse is to seek relief through the legislative process and not to attempt to amend the statutes through judicial fiat.

Neither is the available caselaw supportive of Debtors' position. The Court has not been cited to any federal case in any circuit which expands the reach § 548(a)(2) of the Code beyond that provided in the statute. Correspondingly, Debtors have been unable to cite any Texas state court cases expanding § 51.003 of the Texas Property Code and the Texas Fraudulent Transfer Act in the manner suggested by Debtors. Of the cases cited by Debtors, all are distinguishable. In general, these cases deal with the assessment of damages in the event of a conversion or wrongful foreclosure under Texas state law. Neither of these causes of action were pled and in any case, as previously discussed, the facts do not support a good faith argument that Bank's actions relating to the foreclosures were improper. If it was Debtors' intent to throw these wild charges in the hopes some of them would stick Debtors have done so at their own peril. The Court finds that Debtors' amended complaint has no basis in law or fact and that monetary sanctions are warranted; however, the Court is unable to award sanctions in the amount requested by Defendants.

■ At the regularly scheduled hearing Defendants introduced a series of billing statements indicating that in excess of fifty thousand dollars of attorney time was billed following the filing of Debtors' amended complaint. Debtors object to this evidence on the basis that it does not support time in response to Debtors' amended complaint but rather is bound up with attorney time which Defendants would have invested in trial preparation even in the absence of the amended complaint. The Court must agree that Debtors' objection is substantially valid. From an

independent review of the billing statements the Court finds cause to award Defendants' judgment in the amount of $10,000.00 in compensation for direct and indirect fees and expenses attributable to the filing of Debtors' amended complaint. Accordingly, the Motion is GRANTED and the Court orders judgment against Debtors and Debtors' counsel, Emil Lippe, Jr., jointly and severally, for the sum of $10,000.00. All other relief not expressly granted is denied.